UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 16-00212 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| TOM McCARDELL | MAGISTRATE JUDGE HORNSBY |

_____

## MEMORANDUM RULING

Before the Court is a motion for judgment of acquittal and motion for new trial [Record Document 72], and a supplemental motion thereto [Record Document 89], filed by the Defendant, Tom McCardell ("McCardell"). The Government opposes these motions. See Record Document 90. Following a thorough review of the parties' submissions and the record, the Defendant's motions are **DENIED**.

### I.  Background.

McCardell was the administrator of Physician's Behavioral Hospital ("PBH"), a mental health and substance abuse inpatient treatment facility located in Shreveport, Louisiana. McCardell was charged in an Indictment with fourteen counts of paying illegal kickbacks to Gloria Himmons ("Himmons") in exchange for Himmons' referral of patients to PBH. PBH billed Medicare for the treatment and services it provided to those patients. This violated Medicare's Anti-Kickback Statute, which makes it illegal for anyone to knowingly and willfully offer or pay "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to refer an individual to a person for the furnishing or arranging for the

furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ."  42 U.S.C. § 1320a-7b(b)(2)(A).

The evidence adduced at trial showed that instead of actually hiring Himmons, PBH (at McCardell's direction) created a fraudulent employment file on Himmons' son, Vander Himmons, and issued checks to Vander Himmons for the patient recruitment efforts of his mother.  Vander Himmons then provided the checks to his mother.  PBH personnel testified that most of their communications regarding patient referrals were had with Himmons, not Vander Himmons, PBH's alleged employee. Vander Himmons testified that he did not perform any work for PBH.  During the course of the scheme, Himmons referred approximately 90 patients to PBH, for whom PBH billed Medicare.  At trial, through both witness testimony and in closing argument, McCardell presented an affirmative defense that his payments to Himmons were excepted from liability under the statutory safe harbor provision, discussed infra.

In spite of his defense, on the fourth day of trial, the jury convicted McCardell of all fourteen counts of the Indictment.  These motions followed McCardell's conviction.

## II. <u>Standard of Review for Rule 29 Judgment of Acquittal.</u>

The standard for evaluating a defendant's motion for acquittal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781 (1979).  Thus, the Court's task at this stage is to view not only the evidence, but also all reasonable inferences, in the light most favorable

to the Government. See United States v. Mendoza, 522 F.3d 482, 488 (5th Cir. 2008). "[A]ll credibility determinations are made in the light most favorable to the verdict." Id. (quoting United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999)). "In effect, the court assumes the truth of the evidence offered by the prosecution." United States v. Robertson, 110 F.3d 1113, 1117 (5th Cir. 1997). The Court reviews the sufficiency of circumstantial evidence in the same manner that it reviews the sufficiency of direct evidence. See United States v. DeJean, 613 F.2d 1356, 1358 (5th Cir. 1980). Moreover, "[a]ll evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence." United States v. Peterson, 244 F.3d 385, 389 (5th Cir. 2001) (internal marks omitted). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . ." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." United States v. Vasquez, 677 F.3d 685, 692 (5th Cir. 2012). "Jurors may properly 'use their common sense' and 'evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings.'" Id. (quoting United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989)).

Therefore, this Court will not weigh the evidence or assess the credibility of witnesses, Lopez, 74 F.3d at 577, but rather should determine "only whether the jury made

a rational decision, not whether its verdict was correct on the issue of guilt or innocence." United States v. Dean, 59 F.3d 1479, 1484 (5th Cir. 1995). However, "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." United States v. Moreland, 665 F.3d 137, 149 (5th Cir. 2011). "If the evidence is relatively balanced, a reasonable juror could not convict beyond a reasonable doubt . . . ." Peterson, 244 F.3d at 389. Under those circumstances, the Court should grant the Defendant's motion.

### III. **Standard of Review for New Trial Pursuant to Rule 33.**

Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a). "Such motions are disfavored and reviewed with great caution." United States v. Turner, 674 F.3d 420, 429 (5th Cir. 2012). As such, the remedy of a new trial is "rarely" granted, United States v. O'Keefe, 128 F.3d 885, 898 (5th Cir. 1997), "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." United States v. Wright, 634 F.3d 770, 775 (5th Cir. 2011). The burden of demonstrating that a new trial is warranted rests on the defendant. See United States v. Soto-Silva, 129 F.3d 340, 343 (5th Cir. 1997).

In reviewing a motion for new trial based on the weight of the evidence, the Court is permitted to weigh the evidence and assess the credibility of the witnesses. See United States v. Ramos-Cardenas, 524 F.3d 600, 605 (5th Cir. 2008). "But the 'court may not reweigh the evidence and set aside the verdict simply because it feels some other result

would be more reasonable.'" Id. (quoting United States v. Robertson, 110 F.3d 1113 (5th Cir. 1997)). Instead, the "evidence must preponderate heavily against the verdict" such that allowing the verdict to stand would constitute a miscarriage of justice. Id.

## IV. Analysis.

McCardell's initial motion for acquittal or a new trial alleged simply that "the Government failed to offer sufficient evidence upon which a rational jury could find Tom McCardell guilty beyond any reasonable doubt," but represented that the trial transcripts were necessary to "fully and adequately set forth the legal and factual arguments" supporting McCardell's motion. See Record Document 72, pp. 2-3. After the Court allowed additional time for the defense to obtain and review the trial transcripts, McCardell filed his supplemental motion, which set forth his arguments- both legal and factual- for acquittal or a new trial. Significantly, McCardell did not renew his claim of insufficiency of the evidence, and thus the Court finds that argument has been abandoned.

McCardell now raises four trial errors that he alleges warrant an acquittal or a new trial: (1) the Court erred by characterizing the safe harbor provision as an affirmative defense; (2) the Court erred by requiring the jury to find the applicability of the safe harbor provision before allowing the jury to consider whether a bona fide employment relationship existed between PBH and Himmons, which negated his presumption of innocence; (3) the Court erred in finding that the bona fide employee exception entails a seven-factor test that McCardell was required to satisfy; and (4) the Government failed to provide the defense

with all exculpatory and impeachment evidence on Himmons. The Court finds all of these arguments lack merit for the reasons discussed below.

A. The Safe Harbor Provision.

McCardell's first three challenges are related and will thus be addressed together. As set forth above, the Anti-Kickback Statute "criminalizes the payment of any fund or benefits designed to encourage an individual to refer another party to a Medicare or Medicaid provider . . . ." United States v. Nowlin, 640 F. App'x 337, 344 (5th Cir. 2016). However, there are several statutory exceptions to criminal liability, deemed the safe harbor provisions.

The bulk of McCardell's supplemental motion focuses on his repeated assertions that "the 'safe harbor' 'defense' is **not actually an affirmative defense**." Record Document 91, p. 2 (emphasis in original). In so doing, McCardell ignores consistent jurisprudence from the Fifth Circuit Court of Appeals, which, as pointed out by the Government, does in fact consider the safe harbor provision to be an affirmative defense.[1] Indeed, in United States v. Turner, 561 F. App'x 312, 319 (5th Cir. 2014), the Fifth Circuit stated: "The safe harbor provision is an affirmative defense which the defendant must prove, and a defendant who fails to present evidence supporting the defense is not entitled to the jury charge." See also, United States v. Sanjar, 853 F.3d 190, 207 (5th Cir. 2017) (accepting district court's instruction to the jury that the safe harbor defense is an affirmative defense that must be proved by the defendant by a preponderance of the evidence); United States

---

[1] The Court finds McCardell's untenable position disingenuous at best; at worst, it shows a lack of candor with the Court.

v. Robinson, 505 F. App'x 385, 387-88 (5th Cir. 2013) (holding the evidence presented at trial did not support defendant's "affirmative defense that Jones and Chavis were bona fide employees such that the safe-harbor provision applied . . . ."); and United States v. Job, 387 F. App'x 445, 455 (5th Cir. 2010) (explaining that a "sufficient foundation for an affirmative defense (such as the safe harbor exception) consists of evidence sufficient for a reasonable jury to find in the defendant's favor.") (internal marks omitted).

Further, more generally, the Fifth Circuit has instructed, "It is a well-established rule of criminal statutory construction that an exception set forth in a distinct clause or provision should be construed as an affirmative defense and not as an essential element of the crime." United States v. Wise, 221 F.3d 140, 148 (5th Cir. 2000) (internal marks omitted) (citing with approval United States v. Green, 962 F.2d 938, 941 (9th Cir. 1992), which held that "a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception."). The requirement that the evidence be sufficient to persuade a reasonable juror to find in the defendant's favor or to raise a factual question for the jury extends to all defenses for which the defendant bears the initial burden of production. United States v. Branch, 91 F.3d 699, 712 (5th Cir. 1996).

With the exception of claiming that Sanjar is inapposite, McCardell has not distinguished what appears to be governing Fifth Circuit authority, nor has he submitted alternate authority to support his contention that the safe harbor provision is not an affirmative defense. In fact, McCardell has cited absolutely no case, from the Fifth Circuit

or otherwise, that directly supports his legal position that the safe harbor provision is not an affirmative defense. Here, given the authority directly contrary to the Defendant's arguments, the Court finds that the safe harbor provision is deemed an affirmative defense, and the Court's treatment of it accordingly was not in error.

McCardell also generally challenges the way in which affirmative defenses operate, contending that forcing him to prove his affirmative defense relieved the Government of its obligation to prove him guilty beyond a reasonable doubt, and thus violated due process. However, as the Fifth Circuit has noted,

> [b]alancing the interests of the state in the effective and efficient administration of justice with a defendant's right that the state prove the existence beyond a reasonable doubt of each element of a crime before conviction, the Supreme Court has concluded that, a state may permissibly place (1) the burden of going forward with evidence and (2) the burden of persuasion by a preponderance of the evidence as to an affirmative defense on the accused.

Woods v. Butler, 847 F.2d 1163, 1165 (5th Cir. 1988) (citing Martin v. Ohio, 480 U.S. 228 (1987)). Thus, to the extent McCardell complains that requiring him to prove his affirmative defense unlawfully shifted the Government's burden, the Court rejects that argument.

Finally, McCardell submits that the Court erred when it forced him to prove the bona fide employee defense through a seven-factor test.[2] The bona fide employee exception

---

[2] This position is contrary to McCardell's pretrial filings, in which he represented, "[t]he Government is correct in that to trigger the application of the Safe Harbor Act the defendant has to meet all of the seven of the criteria enumerated in the Government's Memorandum. The defense knows and understands its burden and intends to produce evidence that all seven of the requirements have been met." Record Document 46, p. 3.

is a defense under the safe harbor provisions. Title 42, United States Code, Section 1320a-7b(b)(3)(B) provides that there is no violation of the Anti-Kickback Statute for payments made "by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services." This exception or defense is codified in 42 C.F.R. § 1001.952(i), which provides that remuneration does not include payments to bona fide employees "for employment in the furnishing of any item or service for which payment may be made in whole or in part under Medicare, Medicaid, or other Federal health care programs." 42 C.F.R. § 1001.952(i).

Citing Robinson, McCardell contends that the Fifth Circuit utilizes common law factors to determine one's employment status. The common law factors include the hiring party's right to control the manner and means of the work performed, the method of payment, whether the work is part of the regular business of the hiring party, and the hiring party's control over the worker's hours. Robinson, 505 F. App'x at 387. All of these factors must be considered, with no one factor being dispositive. Id. McCardell submits that the Court erred when it supplanted the common-law factors with a rigid seven-factor test that he was required to prove before the jury could determine if one of the Himmons' was a bona fide employee.[3]

---

[3] The Court notes that McCardell's post-trial motions never identify which particular Himmons– Gloria or Vander– McCardell believed should have been the subject of the bona fide employee exception. If the exception were applicable, the Court would find this information critical. However, the exception is inapplicable and thus not material to the Court's resolution of McCardell's motion.

While McCardell is correct that the Fifth Circuit has used these common-law factors to determine employment status under the bona fide employee defense, he has failed to appreciate that the bona fide employee defense had and has no bearing on McCardell's case. This defense was not raised either prior to or at trial. McCardell's post-trial motions conflate the bona fide employee defense with the personal services and management contracts affirmative defense. The latter, as opposed to the former, is the affirmative defense actually pursued at trial, and it provides:

> Personal services and management contracts. As used in section 1128B of the Act, "remuneration" does not include any payment made by a principal to an agent as compensation for the services of the agent, as long as all of the following seven standards are met—
> (1) The agency agreement is set out in writing and signed by the parties.
> (2) The agency agreement covers all of the services the agent provides to the principal for the term of the agreement and specifies the services to be provided by the agent.
> (3) If the agency agreement is intended to provide for the services of the agent on a periodic, sporadic or part-time basis, rather than on a full-time basis for the term of the agreement, the agreement specifies exactly the schedule of such intervals, their precise length, and the exact charge for such intervals.
> (4) The term of the agreement is for not less than one year.
> (5) The aggregate compensation paid to the agent over the term of the agreement is set in advance, is consistent with fair market value in arms-length transactions and is not determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs.
> (6) The services performed under the agreement do not involve the counselling or promotion of a business arrangement or other activity that violates any State or Federal law.
> (7) The aggregate services contracted for do not exceed those which are reasonably necessary to accomplish the commercially reasonable business purpose of the services.

> For purposes of paragraph (d) of this section, an agent of a principal is any person, other than a bona fide employee of the principal, who has an agreement to perform services for, or on behalf of, the principal.

42 C.F.R. § 1001.952(d).

In pretrial pleadings, the Government raised the distinction between the bona fide employee defense and the personal services and management contracts defense when it objected to the defense's request for a jury instruction on the latter. The Government noted that although a statutory exception exists for bona fide employees, "the defendant does not claim or allege that either of the Himmons was an employee of PBH. In fact . . . PBH completed a Form 1099 for Vander Himmons for the 2011 and 2012 tax years. Neither PBH nor the defendant exercised any control over the Himmons that courts have typically associated with the employer-employee relationship." Record Document 45, p. 7, n.3. Despite having this distinction in defenses highlighted by the Government, McCardell never proposed or even requested a particular instruction be given on the bona fide employee defense, he did not even ask that the term bona fide employee be used in the substantive jury instructions, nor did his theory of the defense embody such an instruction. See Record Documents 29 & 37. And for good reason, as none of the evidence supported a finding that either Gloria or Vander Himmons was a bona fide employee of PBH.

Rather, as the record confirms, the personal services and management contracts defense is the affirmative defense actually raised by McCardell and on which he requested the Court instruct the jury. It was the defense's contention, and was borne out by the

evidence at trial, that Vander Himmons was treated as, and purported to be, an independent contractor of PBH, not an employee. See id. at p. 128-29. The employment agreement between PBH and Vander Himmons specifically stated that Vander Himmons was not an employee of PBH. And, in his closing arguments, defense counsel argued:

> 'An agent of a principal is a person other than a bona fide employee.' He [Vander Himmons] **was not a bona fide employee of the principal**. And the reason they didn't have a file for Gloria Himmons is because she wasn't working there. She didn't work there. She was not on the contract. They paid the son. The son was supposed to do the work.

Record Document 80, p. 132 (emphasis added).

Thus, the Defendant is simply wrong in his assertion that the Court did or should have instructed on the bona fide employee exception. The theory that either of the Himmons was a bona fide employee was neither pursued by defense counsel nor supported by the evidence in this case. The Court did not err in adopting the seven statutorily-enunciated factors for the personal services and management contracts defense, which is the affirmative defense actually requested and argued by defense counsel at trial.

B.  Alleged Brady Violation.

McCardell urges that, in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Government withheld exculpatory evidence relating to Gloria Himmons. Specifically, McCardell asserts that the Government failed to disclose that patients Himmons referred to Hollywood Pavilion Hospital ("Hollywood Pavilion") in Florida were also referred to PBH. In addition, the defense now claims that the Southern District of Florida prosecution and the one in this district "must be seen as one large scheme to defraud,"

such that all debriefings in the Southern District of Florida case (related to Hollywood Pavilion) were required to be produced to McCardell. Record Document 89, p. 11. Relying on a post-trial motion filed by a defendant in the Southern District of Florida case,[4] McCardell contends that Himmons lied to Florida agents during her debriefings in that case. McCardell submits, "[H]ere, the prosecution in the Western District of Louisiana knew of the Florida federal prosecution. Yet it turned over only the plea agreements, and other documents publicly available. It turned over none of the debriefings containing all of Gloria Himmons' lies; and none of the evidence that would have shown that the fraud she was perpetrating was a vast one- and did not include Tom McCardell." Id. at p. 13.

To establish a Brady violation, McCardell must demonstrate that (1) evidence was not disclosed or was suppressed by the prosecutor; (2) the evidence was favorable to the defense; and (3) the evidence was material to either guilt or punishment. United States v. Runyan, 290 F.3d 223, 245 (5th Cir. 2002). In determining materiality, the Court must consider whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler v. Greene, 527 U.S. 263, 290 (1999).

      a. Recycling of patients between hospitals.

Countering McCardell's accusations, the Government contends that it produced to the defense Himmons' grand jury transcript, in which Himmons discussed referring patients

---

[4] The motion for new trial, filed by a defendant in the Southern District of Florida case and premised on Himmons' alleged false testimony in the instant case, was denied by the district court. See Southern District of Florida, 1:12-cr-20757-JEM, Record Document 813.

to both Hollywood Pavilion and PBH. The defense now, belatedly, admits that it received this grand jury testimony and that it knew Himmons referred patients to both hospitals, but claims that Himmons' grand jury testimony failed to disclose that she referred the same patients to both hospitals. The defense argues that this evidence would show that Himmons is a "sophisticated con artist who recycled a stable of patients" through hospitals. Record Document 91, p. 4.

The Court fails to see how this evidence amounts to a Brady violation. First, McCardell has failed to prove that the Government suppressed or failed to disclose any evidence. In fact, McCardell strongly suggests, through the following remarks, that the Government itself did not realize that the same group of patients was referred to both hospitals: "as the Government now knows, and should have known then," Record Document 91, p. 3, "evidently [Gloria Himmons] was successful in duping the Government," id. at p. 4, and "[t]he Government appears to believe that Gloria Himmons is a simple patient recruiter," id. Thus, by asserting that the Government was misled by Himmons and was unaware of the alleged exculpatory evidence, McCardell has not demonstrated that the Government actually suppressed or failed to disclose any evidence. Second, while this evidence may have been favorable to the defense in the sense that it would have given the defense more ammunition at trial, the Court finds this factor is minimized in light of the overwhelming impeachment evidence available to and actually used by the defense at trial–that Himmons perpetrated a similar scheme elsewhere, that she was convicted of a similar fraud in Florida, that she lied and deceived others in order

to successfully execute her scheme, and that she involved her son in order to evade detection. The patient recycling evidence was merely cumulative of the evidence McCardell had already stressed to the jury– that Himmons was a bad actor and unreliable witness. Finally, because the evidence was cumulative of what the jury already knew about Himmons, the Court does not find it material to guilt or punishment. That is, this evidence does not cast Himmons in a different light such that confidence in the verdict is undermined. In short, there is no Brady violation.

    b. Florida Debriefings.

 McCardell's briefing on the issue of the Florida debriefings is inconsistent, at best. First, as set forth previously, McCardell claimed the Government "turned over only the plea agreements, and other documents publicly available. It turned over none of the debriefings containing all of Gloria Himmons' lies; and none of the evidence that would have shown that the fraud she was perpetrating was a vast one." Record Document 89, p. 13. In addition, McCardell represented that he was not "given copies of any of the Florida debriefings of Gloria Himmons by the U.S. Attorneys, or other law enforcement agencies." Record Document 89, p. 11. These are two affirmative, direct allegations of material the Government allegedly failed to disclose, both of which prove to be untrue. That is, in response to McCardell's initial accusations about the lack of disclosures, the Government represented that it <u>did</u> produce Himmons' debriefings from the Florida investigation. In response and without acknowledging his prior misrepresentations to the Court, McCardell now simply retorts that, "the 'summaries' of the Florida debriefings of

Gloria Himmons that were provided by the Government now take on a new light- particularly the huge gaps in those debriefings."

As an initial matter, the Court questions whether McCardell's first briefing to this Court intentionally misrepresented the extent of the Government's disclosure, or whether the defense was merely negligent when it made plain misstatements of fact surrounding the Government's production of evidence related to Gloria Himmons. Either scenario is troubling to the Court, especially in light of the fact that the Court has been presented with specious allegations that have gone unacknowledged and uncorrected by defense counsel. Indeed, confronted with the Government's opposition which provides a clear refutation of McCardell's accusations, the defense does not clarify the record, but merely glosses over its misrepresentations by arguing that the content of the debriefings provided by the Government was not sufficient.

Without question, McCardell has failed to demonstrate a Brady violation. Indeed, as he evidently now concedes, evidence was not suppressed by the prosecutor in this case, but rather was produced to the defense. McCardell's challenge, then, is to the content of the material contained in those disclosures, not to the production of the material. That is, McCardell criticizes the debriefing material itself, arguing that the Florida agents did not satisfactorily explore all of the various avenues of questioning they could have pursued when they interviewed Himmons for the Florida prosecution. Assuming arguendo that McCardell is correct that the Florida agents could have more thoroughly explored Himmons' fraudulent conduct, the reports are what they are. The prosecutor in the Western District

of Louisiana had no control over those Florida interviews, the questions asked by investigators in the Florida case (who were not the same investigators as in the Louisiana case), or the memorialization of those meetings. As defense counsel well knows, the prosecutor in the instant case had no authority or power to alter, amend, or supplement investigative materials that arose out of the Florida case. Thus, once again, McCardell has failed to support his allegation of a Brady violation.

## V. Conclusion.

After a careful and thorough review of the record and the governing jurisprudence, the Defendant's motions for a judgment of acquittal, or alternatively, a new trial, and his request for an evidentiary hearing [Record Documents 72 & 89], be and are hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 23rd day of October, 2017.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE