UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 16-0212 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| TOM MCCARDELL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion filed by Defendant Tom McCardell ("McCardell") seeking reconsideration of this Court's previous ruling [Record Document 145] that McCardell's motion to vacate his conviction under 28 U.S.C. § 2255 was moot. Record Document 146. The Government opposes the motion for reconsideration and argues McCardell's § 2255 motion is moot. Record Document 148.

For the following reasons, McCardell's motion for reconsideration [Record Document 146] is **GRANTED**, and the Court's order denying McCardell's § 2255 motion as moot [Record Document 145] is **VACATED**. Upon consideration on the merits, McCardell's motion to vacate his conviction under 28 U.S.C. § 2255 [Record Document 138] is **DENIED** and **DISMISSED WITH PREJUDICE**.

## Background

On August 25, 2016, McCardell was indicted for fourteen counts of illegal kickbacks in violation of 42 U.S.C. § 1320b-7b(b)(2)(A). Record Document 1. At trial, testimony established that McCardell was a registered nurse working as an administrator for Physicians Behavioral Hospital ("PHB") when he reached out to Gloria Himmons ("Himmons"). *See* Record Document 134 at 3. Ultimately, McCardell and Himmons "agreed

that PHB would pay [Himmons] $2,500 per month in exchange for referring an average of 15 patients" to the hospital each month. *Id.* at 4. When the hospital was low on patients, McCardell reached out to Himmons for additional referrals. *Id.*

Before trial, McCardell's counsel filed a motion to dismiss the indictment based on a number of alleged deficiencies during the grand jury proceedings. Record Document 54. First, the prosecution did not disclose that they had an on-the-record statement from McCardell that he had not spoken with Himmons about the scheme. Record Document 54-1 at 1. Second, the grand jury was not provided with a copy of the contract signed by Himmons, Himmons's resume, or interview statements taken by Special Agent Cooper ("Agent Cooper"). *Id.* at 4. Third, Himmons gave allegedly false testimony by implying that McCardell was paid for each patient referral and by stating that she did not know the parties' agreement was unlawful. *Id.* at 2-3. Fourth, Agent Cooper gave allegedly false testimony that: (a) McCardell knew he was paying Himmons solely for patient referrals, (b) McCardell was able to keep his job because of the referrals, (c) McCardell personally benefitted from the arrangement, and (d) there was no discharge protocol for patients at the facility. *Id.* at 4-6. Defendant's counsel argued that, considered together, the misleading or untruthful testimony was sufficiently prejudicial to dismiss the indictment. *Id.* at 6.

The Court denied the motion to dismiss the indictment, finding that McCardell's claims did not rise to the level of prosecutorial misconduct. Record Documents 58 & 77 at 20. The Court explained that any inconsistencies in Agent Cooper's testimony were valid bases for cross-examination but not grounds to quash the indictment. Record Document

77 at 21. The Court further explained that while Himmons's testimony was vague, there was no evidence that the government participated in any allegedly false testimony. *Id.* The Court reasoned that "even if a witness has lied to the grand jury, absent evidence that the government participated," the false testimony would not give rise to dismissal of the indictment. *Id.* McCardell's case proceeded to trial.

At the conclusion of trial, the jury found McCardell guilty on all fourteen counts. Record Document 71. With a total offense level of twenty-two and criminal history level of I (with zero points), McCardell's Guideline range was forty-one to fifty-one months. Record Document 103 at 13. The Court sentenced McCardell below his Guideline range to a term of twenty-six months as to each count, to run concurrently, and three years of supervised release. Record Document 107. The Court based the downward variance on the 18 U.S.C. § 3553(a) factors including McCardell's age, employment record, to reflect the seriousness of the offense, and to afford adequate deterrence to criminal conduct. Record Document 108 at 3. The Fifth Circuit affirmed McCardell's conviction and sentence. Record Document 134 at 17.

After the Fifth Circuit's mandate issued, McCardell timely filed a motion to vacate his conviction under 28 U.S.C. § 2255. Record Document 138. According to the Bureau of Prisons ("BOP") website, McCardell was released from custody on November 12, 2019, just eight days after the filing of his § 2255 motion. At that time, he began a three-year term of supervised release. However, on April 14, 2021, the Court approved early termination of McCardell's supervised release. *See* Record Document 144. Shortly after

McCardell's supervised release was terminated, the Court *sua sponte* determined that McCardell's § 2255 motion was moot and denied it on that basis. Record Document 145.

In response, McCardell filed the instant motion for reconsideration, arguing that his claim is not moot because his conviction impacts his rights to vote and to own a firearm, and because his nursing license was revoked because of his conviction. Record Document 146. McCardell submitted evidence that his nursing license has been impacted by his conviction, including (1) a letter notifying him that he is the subject of a report submitted to the National Practitioner Data Bank, and (2) a letter notifying him that the Office of Personnel Management ("OPM") proposes to debar him from participating in the Federal Employees Health Benefits Program ("FEHBP") (the "debarment notice"). Record Document 146-1. The debarment notice states that the "term of th[e] debarment is concurrent with the term of [McCardell's] DHHS exclusion," and that OPM will "terminate [his] debarment when DHHS notifies [OPM] that they have reinstated [him]." *Id.* at 1.[1]

## Law & Analysis

**I.   Motion to Reconsider**

    **A. Applicable Law**

        **i.  Rule 60(b)**

Under Rule 60(b), a Court "may relieve a party . . . from a final judgment, order, or proceeding" for limited reasons. These reasons include: "mistake, inadvertence,

---

[1] McCardell's debarment is mandatory under 5 C.F.R. § 890.1004 and 5 U.S.C. § 8902a(b)(5). However, the term of McCardell's debarment by DHHS and OPM is unclear. *See* 5 U.S.C. § 890.1004; 5 C.F.R. §§ 8902a(d)(5), (f) (governing the length of debarment).

4

surprise, or excusable neglect" (Rule 60(b)(1)); where "applying [the judgment] prospectively is no longer equitable" (Rule 60(b)(5)); or for "any other reason that justifies relief" (Rule 60(b)(6)). Rule 60(b) is a remedial provision and is to be liberally construed. *Greater Baton Rouge Golf Ass'n v. Recreation & Park Comm'n*, 507 F.2d 227, 228 (5th Cir. 1975); *Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351, 355 (5th Cir. 1965). "The rule is broadly phrased and many of the itemized grounds are overlapping, freeing [c]ourts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds." *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965). When applicable, Rule 60(b) "may be relied on in habeas corpus proceedings." *Gray v. Estelle*, 574 F.2d 209, 214 (5th Cir. 1978).

### ii. Mootness

As the Court explained in its previous order in this matter, "[u]nder Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citation omitted). The "case or controversy" requirement subsists throughout a case during all stages, and a case becomes moot if it no longer presents a case or controversy. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Lewis*, 494 U.S. at 477-78). Generally, any set of circumstances eliminating the controversy after the lawsuit is filed renders the case moot. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). "Mootness is a jurisdictional question." *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003).

The *Spencer* Court explained that "for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (citing *Spencer*, 523 U.S. at 7). "The petitioner presents an Article III controversy when he demonstrates 'some concrete and continuing injury other than the now-ended incarceration'—a 'collateral consequence of the conviction.'" *Id.* (quoting *Spencer*, 523 U.S. at 7); *see also United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020).

Courts have consistently recognized that petitioners satisfy the mootness requirement where they establish a concrete and continuing injury stemming from their conviction. In *Carafas v. Lavalle*, the United States Supreme Court found it "clear" that petitioner's case was not moot where, as consequences of his conviction, the petitioner could not "engage in certain businesses," serve as a labor union official, vote, or serve as a juror. 391 U.S. 234, 237 (1968). The Fifth Circuit has held that where a petitioner's conviction means "that 'in many states they will not be able to vote, sit on juries or run for public office,'" the petitioner's case is not moot. *Brown v. Resor*, 407 F.2d 281, 283 (5th Cir. 1969). Further, a petitioner's conviction may not be moot where it could be used to "subject [the petitioner] to persistent felony offender prosecution if he should go to trial on any other felony charges in the future." *See Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985); *Minor v. Dugger*, 864 F.2d 124 (11th Cir. 1989).

### B. Analysis

McCardell seeks reconsideration pursuant to Rule 60, contending the Court should reconsider its order because he has evidence that his claim is not moot. Record Document 146. The Court previously raised the issue of mootness *sua sponte*. However, the Court now has information that suggests McCardell's claim is not moot.[2]

First, McCardell submits evidence that he has been debarred as a registered nurse because of his conviction. McCardell's documentation indicates his debarment was mandatory, but the cited regulations do not require permanent debarment. *See* Record Document 146-1 at 1. However, in addition to the *potential* impact of McCardell's conviction on his nursing licensure, the Court finds that McCardell's claim is not moot because McCardell's conviction does otherwise impact his rights. McCardell's presentence report shows no prior criminal history or convictions. *See* Record Document 103 at 7. The Court acknowledges that there are a number of laws that restrict federal felons' civil rights. *See, e.g.*, 18 U.S.C. § 922(g)(1) (making it unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm); *see also Brown*, 407 F.2d at 283; *Evitts*, 469 U.S. at 391 n.4.

The Government contends that courts in this circuit have "found that after release and completion of supervised release terms, the appeals or § 2255 motions [a]re moot, as there [a]re no continuing collateral consequences." Record Document 148 at 3. The Government is correct that some petitioners' claims are mooted by their completion of

---

[2] The Court notes that if McCardell's § 2255 motion was moot, it would have deprived this Court of jurisdiction to rule on the motion. *See Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004).

7

supervised release. This includes petitioners who do not raise continuing collateral consequences and cases where petitioners had prior convictions that already deprived them of various civil liberties. *See, e.g.*, *Martinez-Tapia v. United States*, No. 13-CR-1409, 2017 WL 1426612, at *1-2 (S.D. Tex. Apr. 21, 2017) (finding petitioner's § 2255 claim moot because he was "released from custody and he has made no affirmative showing that he continues to suffer any collateral consequences," which cannot be simply presumed by the court); *Malloy v. Purvis*, 681 F.2d 736, 738 (11th Cir. 1982) (finding petitioner's § 2255 claim moot where petitioner "conceded that no civil liberties not already forfeited as a result of prior convictions w[ould] be reinstated should th[e] conviction be overturned" and argued simply that the "blemish" of the conviction was sufficient to satisfy the case and controversy requirement).

The Government also contends that the "relief sought is central to the determination of mootness." Record Document 148 at 4. The Government argues that because McCardell did not request the return of his license, right to vote, or right to possess a firearm in his § 2255 motion, his claim is moot. *Id.* at 5. But in McCardell's § 2255 motion, he specified the relief sought as follows: "overturn my conviction and my sentencing." Record Document 138 at 12. Overturning McCardell's conviction would be sufficient to restore the civil liberties McCardell raises here.

The Court finds McCardell is entitled to relief under Rule 60(b) based on inadvertence or for "other reasons."[3] McCardell's motion for reconsideration [Record

---

[3] The Court recognizes that Federal Rule 60(b)(1), (5), and (6) are "mutually exclusive." *Murray v. Ford Motor Co.*, 770 F.2d 461, 463 (5th Cir. 1985). However, the significant difference between these provisions is that motions to reconsider under Rule 60(b)(1)

8

Document 146] is **GRANTED** and the Court's ruling that McCardell's motion under § 2255 is moot [Record Document 145] is **VACATED**.

## II. Section 2255 Motion

### A. 28 U.S.C. § 2255

Having found McCardell's § 2255 motion is not moot, the Court turns to the merits of the motion. Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a).

"As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)). After a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (internal marks omitted) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range

---

must be brought within one year of the judgment. Fed. R. Civ. Pro. 60(c)(1). McCardell filed his motion approximately one month after the Court's judgment. Record Documents 145 & 146. Even if relief is justified under Federal Rule 60(b)(1), as opposed to 60(b)(5) or (6), the motion is timely.

9

of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

### B. Analysis of Claims

McCardell has two main bases for his § 2255 motion. First, he argues his counsel was ineffective for failing to present evidence and for failing to raise allegedly perjured testimony. *See* Record Documents 138 at 13 & 138-2 at 16-17. Second, McCardell argues that government witnesses gave perjured grand jury testimony that: (a) McCardell was able to keep his job by getting referrals; (b) PHB did not have a proper discharge procedure; (c) Himmons did not have any medical background; (d) McCardell was paid for each referral; and (e) McCardell benefitted from the scheme. *See* Record Document 138-2.

#### i. Ineffective Assistance of Counsel

McCardell argues his counsel was ineffective for failing to present phone records showing calls between McCardell and Special Agent Cooper,[4] and for failing to raise allegedly perjured testimony that Himmons did not have any medical background. *See* Record Documents 138 at 13 & 138-2 at 16-17.

---

[4] In his filing, McCardell labels his counsel's failure to present the phone records as "irrefutable evidence of a '*Brady* violation.'" Record Document 138 at 13. McCardell is a *pro se* defendant and his filings are "entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011). Counsel's failure to present evidence does not implicate *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Therefore, the Court will analyze this claim as to ineffective assistance only.

10

The Court may consider a petitioner's ineffective assistance of counsel claim for the first time on a § 2255 motion. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To state a successful claim of ineffective assistance of counsel, petitioner must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof of showing both prongs are met. *See Strickland*, 466 U.S. at 687. A court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice without inquiry into the remaining prong. *See id.* at 689-94.

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation omitted)). If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel

11

has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

McCardell fails to carry his burden. As to the phone records showing calls between McCardell and Agent Cooper, McCardell does not present any argument as to why his counsel should have introduced evidence of the phone calls. McCardell's sole argument is that his counsel was ineffective for failing to comply with McCardell's request that he introduce the evidence—with no explanation of the potential significance of that evidence. *See* Record Document 138 at 13. "In *Strickland*, the Supreme Court held that there is a strong presumption that an attorney's decision to introduce or withhold evidence is a tactical decision made 'in the exercise of reasonable professional judgment.'" *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986) (quoting *Strickland*, 466 U.S. at 690). "Because [McCardell] has presented no evidence to rebut this strong presumption, [the Court]

12

find[s] that [McCardell] was not denied effective assistance of counsel" as to this alleged deficiency. *See id.*

As to McCardell's claim that his counsel was ineffective for failing to raise the allegedly perjured testimony that Himmons did not have any medical background, McCardell again fails to explain why his counsel should have introduced this evidence. On appeal, the Fifth Circuit explicitly rejected McCardell's arguments that Himmons's knowledge of the anti-kickback law, or lack thereof, was relevant to McCardell's conviction. *See* Record Document 134. The court explained:

> McCardell's attempt to rely on Gloria's supposed ignorance to demonstrate that it would be irrational for a jury to convict him is also unpersuasive. Even if Gloria were ignorant of the law, that says little about what McCardell, a hospital administrator in charge of ensuring compliance, knew or did not know. But, even accepting McCardell's premise that Gloria's knowledge was relevant to his understanding, there was more than enough evidence to suggest that she knew her actions were illegal.

*Id.* at 10. Whether Himmons did or did not have a medical background had no bearing on whether McCardell knew that his actions were unlawful.

McCardell fails to carry his burden of showing his counsel was deficient for failing to introduce the phone records or for failing to raise the grand jury testimony about Himmons's lack of medical background. *See Strickland*, 466 U.S. at 687. Therefore, McCardell's claim of ineffective assistance fails.

### ii. Allegedly Perjured Grand Jury Testimony

Next, the Court considers McCardell's allegation that there was perjured grand jury testimony, including testimony that: (a) McCardell was able to keep his job by getting referrals for PHB; (b) PHB did not have a proper discharge procedure; (c) Himmons did

13

not have any medical background; (d) McCardell was paid for each referral, and (e) McCardell personally benefitted from the arrangement. Record Document 138-2 at 5, 12, 16-17, 22, 57.

"The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." *Kinsel v. Cain*, 647 F.3d 265, 271 (5th Cir. 2011) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (finding that a defendant is denied due process "when the State, although not soliciting false evidence, allows [false evidence] to go uncorrected when it appears" (quoting *Napue*, 360 U.S. at 269)). This is because "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted). A defendant is entitled to a new trial based on perjured government testimony "if (1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material." *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997).

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "Importantly, due process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is

14

inconsistent with prior statements." *Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002) (citing *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001)). "It is axiomatic that not every lie is material." *O'Keefe*, 128 F.3d at 894. "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner*, 242 F.3d at 609.

None of the allegedly perjured testimony McCardell raises is material. Most significantly, McCardell cannot show that if he knew about these misstatements before trial, the results of the proceeding would have been different. *See Bagley*, 473 U.S. at 682. McCardell knew of, and challenged, a majority of the allegedly perjured testimony before the trial even began. *See* Record Document 54. The only testimony that was not included in his pre-trial motion to dismiss the indictment is the testimony that Himmons did not have any medical background. And, as explained *supra*, that testimony was not material.

Even assuming the testimony McCardell cites was actually false, none of the statements made, considered individually or together, would have been sufficient to undermine the outcome. The testimony McCardell points to is not conflicting or inconsistent—it is simply inconsistent with the facts as McCardell presents or interprets them. Further, the Fifth Circuit considered and rejected several of McCardell's interpretations of the facts at hand. McCardell argued on appeal that "the payments he made to Gloria were not specifically tied to a given number of patients" and that "he did not personally benefit from his arrangement . . . except that the hospital remained open and he kept his job." Record Document 134 at 8. The Fifth Circuit rejected McCardell's arguments because "[t]he government marshaled enough evidence for the jury to conclude that McCardell acted knowingly and willfully." *Id.* It is not clear from McCardell's

15

motion, nor from a review of the counts charged against McCardell, how any of the allegedly perjured testimony would have impacted the jury's determination as to whether McCardell knowingly and willingly paid renumeration to induce another to refer an individual to PHB. *See* Record Document 1 at 4.

In sum, McCardell's ineffective assistance claim fails because McCardell has not carried his burden of showing that his counsel was deficient for failing to introduce evidence with no relevance to the material facts. McCardell's claim as to allegedly perjured grand jury testimony fails because McCardell cannot establish that the testimony was false, nor that it was material. McCardell is not entitled to relief under 28 U.S.C. § 2255.

## Conclusion

For the reasons assigned herein, McCardell's motion for reconsideration [Record Document 146] is **GRANTED**, and the Court's order denying McCardell's motion for relief to vacate his conviction under 28 U.S.C. § 2255 [Record Document 145] is hereby **VACATED**. Upon consideration on the merits, McCardell's motion to vacate his conviction under 28 U.S.C. § 2255 [Record Document 138] is **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because McCardell has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 2nd day of May, 2025.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE